**THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**
**OKLAHOMA CITY DIVISION**

| | |
|---|---|
| **DONALD DIXON** <br>      **Plaintiff,** <br><br> **v.** <br><br> **EXPERIAN INFORMATION SOLUTIONS,** <br> **INC., TRANS UNION, LLC, EQUIFAX** <br> **INFORMATION SERVICES, LLC,** <br>      **Defendants.** | )<br>)<br>)<br>)  **Case No.**<br>)      **5:25-cv-01016-G**<br>)<br>)<br>)<br>) |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR**
**JUDGMENT ON THE PLEADINGS**

---

COMES NOW Plaintiff Donald Dixon ("Mr. Dixon"), by and through counsel Jeffrey A. Wilson, and submits this Response in Opposition to Defendants' Joint Motion for Judgment on the Pleadings (the "Motion"). Mr. Dixon respectfully requests that the Court deny the Motion for the reasons set forth below.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................iv

LEGAL STANDARD .........................................................................................1

ARGUMENTS & AUTHORITIES.........................................................................1

I.  Defendants' Motion depends on factual inferences the Court cannot draw against Mr. Dixon at the Rule 12(c) stage. ...........................................................3

II. Mr. Dixon plausibly alleges Article III standing because Defendants' incomplete file disclosures deprived him of information needed to understand and dispute his credit files..........................................................................................4

   A.  Denial of § 1681g file information is concrete when it impairs the consumer's ability to use the FCRA dispute process. ..............................................5

   B.  Third-party publication and credit denial are not required to plead standing for an incomplete consumer file disclosure...........................................7

   C.  Mr. Dixon also alleges practical harms flowing from the incomplete disclosures. ...................................................................................9

   D.  Defendants' standing attack improperly converts merits disputes over disclosure completeness into a jurisdictional challenge........................9

III. Mr. Dixon states a § 1681g claim because he plausibly alleges Defendants failed to clearly and accurately disclose account-level file information.........................10

   A.  Section 1681g required Defendants to provide a clear and accurate disclosure of Mr. Dixon's file information, not merely some disclosure output. ..................11

   B.  Mr. Dixon pleads account-specific omissions and unclear disclosures across all three CRAs. .............................................................................13

   C.  *Hardin* is the more analogous pleading-stage authority; *Dotson* involved a materially thinner complaint. ...........................................................15

   D.  Defendants' "No Data," blank-field, historical-payment, and truncation explanations raise factual and system-logic issues. ..............................16

IV. Mr. Dixon properly states a § 1681i claim because he disputed both inaccurate and incomplete account information that Defendants failed to reasonably reinvestigate.............................................................................17

A. Section 1681i expressly covers incomplete and unverifiable information, not just literal falsity. .......................................................................................... 18

B. Defendants' "delete the omissions" argument misstates § 1681i(a)(5), which uses mandatory deletion or modification language. ............................................... 19

C. The post-dispute disclosures plausibly show that Defendants failed to reasonably resolve the disputed payment-history and account-completeness issues. ...................................................................................................................... 20

**V. Mr. Dixon plausibly states a § 1681e(b) claim based on report-facing conduct and materially misleading account-performance information. ..................................... 22**

**VI. Defendants' willfulness and damages arguments do not justify judgment on the pleadings or dismissal with prejudice. ................................................................... 23**

# TABLE OF AUTHORITIES

## United States Supreme Court

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)........................................................................................... 1

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)........................................................................................... 1

*Fed. Election Comm'n v. Akins*,
  524 U.S. 11 (1998)............................................................................................. 6

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)........................................................................................... 6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)........................................................................................... 5

*Public Citizen v. U.S. Dep't of Justice*,
  491 U.S. 440 (1989)........................................................................................... 6

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007)........................................................................................... 24

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)......................................................................................7, 8

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001)........................................................................................... 19

## United States Circuit Court of Appeals

Atl. Richfield Co. v. Farm Credit Bank,
  226 F.3d 1138 (10th Cir. 2000) ........................................................................ 1

*Birmingham v. Experian Info. Sols., Inc.*,
  633 F.3d 1006 (10th Cir. 2011). ..................................................................... 24

Borde v. Bd. of Cty. Comm'rs,
  514 F. App'x 795 (10th Cir. 2013)................................................................1, 5

*Cushman v. Trans Union Corp.*,
  115 F.3d 220 (3d Cir. 1997). .......................................................................... 19

GFF Corp. v. Assoc. Wholesale Grocers, Inc.,
   130 F.3d 1381 (10th Cir. 1997). ..................................................................... 1

Gillespie v. Equifax Info. Servs., LLC,
   484 F.3d 938 (7th Cir. 2007). ...................................................................... 12

Llewellyn v. Allstate Home Loans, Inc.,
   711 F.3d 1173 (10th Cir. 2013) ............................................................... 19, 23

Selvam v. Experian Info. Sols., Inc.,
   651 F. App'x 29 (2d Cir. 2016) ................................................................... 12

Tailford v. Experian Information Solutions, Inc.,
   26 F.4th 1092 (9th Cir. 2022). ..................................................................... 8

Wright v. Experian Info. Sols., Inc.,
   805 F.3d 1232 (10th Cir. 2015) ............................................................... 18, 21

Younger v. Experian Info. Sols., Inc.,
   817 F. App'x 862 (11th Cir. 2020). .............................................................. 18

## United States District Courts

Banks v. Equifax Info. Servs. LLC, No. 5:25-cv-00111-JRG-JBB, Dkt. 23 (E.D. Tex. Feb. 9, 2026) ........................................................................................................ 6

Dotson v. National Consumer Telecommunications and Utility Exchange, Inc.,
   No. CIV-25-1171-SLP, 2026 WL 575337 (W.D. Okla. Mar. 2, 2026).................. 15, 16

Hardin v. Equifax Information Services, LLC,
   No. CIV-25-1374-HE, Doc. 15 (W.D. Okla. Jan. 14, 2026). ............................... 13, 16

## Federal Statutes

15 U.S.C. § 1681a(g) ............................................................................... 5, 7, 11

15 U.S.C. § 1681e(b). ................................................................................... 22

15 U.S.C. § 1681g(a) ................................................................................... 11

15 U.S.C. § 1681g(a)(1) ............................................................................. 5, 11

15 U.S.C. § 1681i(a)(1)(A)......................................................................... 19, 20

15 U.S.C. § 1681i(a)(5)(A).......................................................................... 19, 20

## LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Borde v. Bd. of Cty. Comm'rs*, 514 F. App'x 795, 799 (10th Cir. 2013) (citing *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000)). The Court may grant the motion only if the complaint fails to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In assessing plausibility, the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Borde*, 514 F. App'x at 799.

The Court generally may not consider matters outside the pleadings unless the document is referred to in the complaint, central to the claim, and indisputably authentic. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

## ARGUMENTS & AUTHORITIES

This case concerns a basic accountability principle built into the Fair Credit Reporting Act. Consumers do not choose the CRAs that compile and maintain files about them. Nevertheless, the nationwide consumer reporting agencies compile, maintain, and furnish information that can affect a consumer's financial life. Congress therefore gave consumers a statutory right to see what information CRAs are attributing to them, understand that information, and dispute information that is inaccurate, incomplete, misleading, or unverifiable.

This is not a formatting dispute. Mr. Dixon alleges that Defendants provided disclosures containing inaccurate, incomplete, misleading, and unusable file information.

1

The Amended Complaint identifies specific accounts, fields, date ranges, and defects, including omitted or obscured account identifiers, incomplete payment histories, incomplete balance histories, "ND" or blank actual-payment fields, inaccurate balance and payment information, and post-dispute disclosures that continued to reflect material errors and omissions.

Those allegations directly answer Defendants' assertion that Mr. Dixon failed to plead an actionable inaccuracy or disclosure failure. Whether Defendants can later prove that the missing, blank, truncated, or "ND" entries were accurate, complete, immaterial, nonexistent, or lawfully omitted is a merits question. It is not a basis for judgment on the pleadings.

Defendants' Motion rests on five related arguments: (1) that Mr. Dixon fails to state a plausible § 1681g claim; (2) that his §§ 1681e(b) and 1681i claims fail absent an actionable inaccuracy; (3) that he lacks Article III standing; (4) that willfulness is unavailable under Safeco; and (5) that damages and amendment cannot save his claims. None warrants judgment on the pleadings. Each either narrows the FCRA beyond its text, misstates the pleading-stage standard, or asks the Court to resolve disputed factual and systems-based issues before discovery.

Defendants' Motion does not expose a pleading defect; it exposes factual disputes. Whether Defendants possessed additional file information, suppressed or failed to render it, used disclosure logic that produced incomplete or inaccurate fields, prepared or furnished reports containing materially misleading account information, or reasonably reinvestigated Mr. Dixon's disputes are questions for discovery, not Rule 12(c). The

2

Amended Complaint plausibly alleges FCRA violations and concrete harm. That is all Rule 12 requires.

In short, Defendants' Motion depends on equating disclosure output with statutory file content. But a consumer disclosure shows only what Defendants displayed to Mr. Dixon. It does not conclusively establish what Defendants recorded, retained, received from furnishers, mapped into fields, suppressed, translated, or failed to render. Defendants may prove later that the challenged information did not exist, was not retained, was not reportable, or was lawfully omitted. They cannot obtain judgment on the pleadings by asking the Court to assume those facts in their favor.

## I.    Defendants' Motion depends on factual inferences the Court cannot draw against Mr. Dixon at the Rule 12(c) stage.

Rule 12(c) does not permit Defendants to convert factual defenses into pleading defects. Mr. Dixon alleges that Defendants failed to clearly and accurately disclose file information, omitted source and account-level data, provided incomplete and misleading payment and balance histories, and failed to reasonably reinvestigate after written disputes identified those problems. Those allegations must be accepted as true at this stage.

Defendants may later attempt to prove that the challenged entries were accurate, complete, clear, immaterial, nonexistent, or lawfully omitted. However, Defendants' position would invert the pleading-stage standard. They ask the Court to treat their disclosure outputs as conclusive proof of compliance and require Mr. Dixon, before discovery, to establish the contents of Defendants' internal files and the operation of their disclosure systems with evidentiary precision.

3

The Court cannot infer, on the pleadings, that undisplayed information did not exist, that "ND" or blank fields meant nothing was recorded or retained, that truncated identifiers were necessarily clear and usable, or that generating some disclosure satisfied § 1681g. Defendants' disclosures are not self-proving records of FCRA compliance. They show what Defendants displayed to Mr. Dixon; they do not conclusively establish what Defendants recorded, retained, received, suppressed, translated, or failed to render.

That distinction defeats Defendants' threshold premise. Section 1681g asks what information was in Mr. Dixon's file and whether it was clearly and accurately disclosed. Section 1681i asks whether Defendants reasonably reinvestigated after receiving his disputes. Section 1681e(b) asks whether Defendants used reasonable procedures when preparing consumer reports. Those questions require facts about Defendants' files, source data, field meanings, disclosure rules, reinvestigation steps, and reporting procedures, not defense-favorable inferences from the face of the challenged disclosures.

## II. Mr. Dixon plausibly alleges Article III standing because Defendants' incomplete file disclosures deprived him of information needed to understand and dispute his credit files.

Defendants' standing argument fails because it measures the wrong injury. Mr. Dixon does not rely solely on a later credit denial or a third party's adverse use of his information. Rather, his injury stems directly from Defendants' failure to provide the accurate, complete, and clear file disclosures mandated by the FCRA, and from Defendants' failure to reasonably reinvestigate after he disputed the inaccurate, incomplete, and unclear account information those disclosures revealed.

That statutory deprivation impaired his ability to review his credit history, identify systemic omissions, verify his records, compare the disclosures against his own account information, and meaningfully invoke the FCRA's dispute and correction process. Far from a bare procedural technicality, this structural barrier caused concrete, practical harms, including confusion, frustration, delay, wasted time, emotional distress, and obstruction of his ability to understand, dispute, and correct his files. Those harms are explicitly alleged in the Amended Complaint and are directly tied to the consumer-protection functions served by both § 1681g and § 1681i.

**A. Denial of § 1681g file information is concrete when it impairs the consumer's ability to use the FCRA dispute process.**

At the pleading stage, Article III requires plausible allegations of a concrete and particularized injury fairly traceable to the defendant and redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The Court accepts the Complaint's factual allegations as true and draws reasonable inferences in Mr. Dixon's favor. *Borde v. Bd. of Cty. Comm'rs*, 514 F. App'x 795, 799 (10th Cir. 2013).

Mr. Dixon satisfies that standard. Section 1681g requires a consumer reporting agency, upon request and proper identification, to clearly and accurately disclose all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(1). The statute defines that disclosure universe broadly: a consumer's "file" means "all of the information on that consumer recorded and retained by a consumer reporting agency, regardless of how the information is stored." 15 U.S.C. § 1681a(g). Thus, the relevant question is not limited to what Defendants chose to display in Mr. Dixon's consumer

5

disclosures or what they now say appeared on a particular output. The question is whether Defendants recorded and retained information about Mr. Dixon that fell within § 1681g's disclosure duty.

That disclosure right is practical, not formal. Section 1681g gives consumers access to their own file information so they can review the file, identify inaccuracies or omissions, compare the disclosure against their own records, and invoke the FCRA's dispute process. The Supreme Court has long recognized that denial of information a statute requires to be disclosed can be a concrete injury. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998); *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982).

The Banks case illustrates the same point in this § 1681g context. There, the magistrate judge recommended denying Equifax's standing challenge where the plaintiff alleged that Equifax omitted full account numbers, account information, and payment history, causing frustration and emotional distress while impairing her ability to understand the disclosure, identify accounts, and compare those accounts with her own records. *Banks v. Equifax Info. Servs. LLC*, No. 5:25-cv-00111-JRG-JBB, Dkt. 23, at 1-2, 7-10 (E.D. Tex. Feb. 9, 2026). The court explained that, after *Ramirez*, a plaintiff pleads informational injury by alleging that she was denied information to which she was legally entitled and that the denial caused adverse consequences related to the purpose of the statute. *Id*. at 8-10. Mr. Dixon alleges that same kind of injury here.

Mr. Dixon alleges that Defendants provided electronic consumer disclosures through AnnualCreditReport.com but failed to clearly and accurately disclose information

6

that fell within the FCRA's definition of "file," that is, information about Mr. Dixon recorded and retained by Defendants, regardless of where or how it was stored. Am. Compl. ¶¶ 72-77, 84; 15 U.S.C. § 1681a(g). He further alleges that the omitted or obscured information included account identifiers, payment histories, balance histories, actual-payment fields, and other account-level data needed to evaluate and dispute his files. Am. Compl. ¶¶ 17-18, 23-33, 36-38, 44-52, 55-57, 62-71. Those allegations describe a concrete deprivation of file information within § 1681g's disclosure duty.

Ramirez does not defeat this theory. In *Ramirez*, the Supreme Court rejected standing for certain disclosure-formatting claims where the plaintiffs did not allege that they failed to receive required information or suffered adverse effects from the formatting violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021). Mr. Dixon alleges the opposite. He alleges that Defendants failed to provide file information the FCRA required them to disclose and that the omissions impaired his ability to review and dispute his files. The injury is not the mere internal existence of inaccurate data; it is Defendants' alleged failure to provide information to Mr. Dixon so he could use the statute's dispute-and-correction process.

## B. Third-party publication and credit denial are not required to plead standing for an incomplete consumer file disclosure.

Defendants argue that Mr. Dixon lacks standing because he does not plead a specific denial of credit, adverse credit decision, changed credit terms, or third-party publication of the challenged information. That argument imports the wrong injury model into a § 1681g claim.

A consumer-disclosure claim under § 1681g does not require the consumer to wait until a lender uses incomplete or unclear file information against him. Section 1681g operates before that point. Its purpose is to enable the consumer to learn what the CRA has recorded, identify inaccuracies or omissions, and invoke the dispute process before the file causes downstream harm. *See Ramirez,* 594 U.S. at 439-42; *Tailford v. Experian Information Solutions, Inc.*, 26 F.4th 1092, 1100-01 (9th Cir. 2022). *Ramirez* recognized that the FCRA's disclosure requirements protect consumers' interest in learning of inaccuracies in their credit files so they can promptly correct the files before dissemination to third parties. *Ramirez,* 594 U.S. at 442.

That statutory design matters. If third-party publication or a completed credit denial were required whenever a CRA failed to disclose file information, § 1681g would be enforceable *only* after its preventive purpose had failed. Congress created the consumer file-disclosure right so consumers could review and correct their files before undisclosed or unclear information caused downstream credit harm. In any event, Defendants cannot defeat standing at Rule 12(c) by assuming a no-exposure factual premise in their favor.

Similarly, a credit denial is not required. A credit denial may be one way to show concrete harm in some FCRA cases, but it is not the only way. Where the statute gives a consumer a right to obtain information, denial of that information can be concrete when it impairs the interest Congress protected. Here, the withheld or obscured information concerned Mr. Dixon's own credit files, his own accounts, and his own ability to exercise his FCRA dispute rights. That is enough at the pleading stage.

### C. Mr. Dixon also alleges practical harms flowing from the incomplete disclosures.

Even if the Court required downstream consequences beyond the informational deprivation itself, the Amended Complaint pleads them. Mr. Dixon alleges practical harms flowing from Defendants' incomplete disclosures, including confusion, delay, time spent attempting to remedy the deficiencies, emotional distress, and impaired ability to understand, dispute, and correct his files. Am. Compl. ¶ 79. Those harms are tied to the statutory failure alleged. A consumer cannot meaningfully dispute what he cannot see, identify, match, compare, or verify. Defendants may test causation and damages later, but those proof issues do not eliminate standing at the pleading stage.

### D. Defendants' standing attack improperly converts merits disputes over disclosure completeness into a jurisdictional challenge.

Defendants' standing argument also fails because it repackages merits disputes as jurisdictional defects. Defendants say Mr. Dixon lacks standing because he has not proven that missing information existed in their files, that "ND" entries were inaccurate, that blank fields reflected omitted data, or that their disclosures were incomplete. Those arguments go to the merits of the § 1681g claim. They do not defeat standing.

Standing asks whether Mr. Dixon alleges a concrete injury fairly traceable to Defendants' challenged conduct and redressable by the Court. He does. Whether Defendants actually possessed additional file information, whether their systems suppressed or failed to render it, and whether the disclosures were clear and accurate are merits questions. They require discovery into Defendants' files, field mappings, disclosure

9

templates, display rules, and business logic. They cannot be resolved by labeling the dispute jurisdictional.

The same is true of Defendants' reliance on "No Data," blank fields, and account-number truncation. Those features may become evidence in the case, but they do not conclusively establish what Defendants recorded, retained, omitted, masked, suppressed, rendered, or disclosed. Defendants' preferred interpretation of their own disclosures cannot be used to defeat jurisdiction at Rule 12(c).

The Court should therefore reject Defendants' standing attack. Mr. Dixon alleges that Defendants denied him file information within § 1681g's disclosure duty, impaired his ability to use the FCRA dispute process, and caused concrete practical harms. That is enough to plead Article III standing.

**III.    Mr. Dixon states a § 1681g claim because he plausibly alleges Defendants failed to clearly and accurately disclose account-level file information.**

Defendants' § 1681g argument fails because it answers the wrong case. Mr. Dixon does not merely allege that a creditor received a false credit report. He alleges that Defendants gave him consumer file disclosures that were incomplete, unclear, and unusable for the statutory purpose of reviewing and disputing his own files. Defendants respond by collapsing § 1681g into a creditor-facing publication theory and by treating their disclosure outputs as conclusive proof of the contents of Mr. Dixon's statutory files. Neither move is proper under Rule 12(c).

A consumer disclosure shows what Defendants displayed to Mr. Dixon. It does not establish, as a matter of law, what Defendants recorded, retained, suppressed, omitted,

masked, or failed to render. Mr. Dixon alleges qualifying requests, disclosures by each CRA, account-specific omitted or obscured file information, written disputes, and post-dispute persistence. Those allegations state a plausible § 1681g claim.

**A. Section 1681g required Defendants to provide a clear and accurate disclosure of Mr. Dixon's file information, not merely some disclosure output.**

Section 1681g creates a consumer-facing disclosure duty separate from the creditor-facing accuracy rules Defendants invoke. Under Section 1681g(a), a consumer reporting agency must, upon proper request, "clearly and accurately disclose to the consumer" all required information. 15 U.S.C. § 1681g(a). This disclosure includes "[a]ll information in the consumer's file at the time of the request," which the statute defines broadly to mean "all of the information on that consumer recorded and retained by a consumer reporting agency, regardless of how the information is stored." 15 U.S.C. § 1681g(a)(1); 15 U.S.C. § 1681a(g).

Therefore, the statutory question is not whether Defendants believed a creditor-facing report would mislead a lender. Nor is it limited to whichever fields Defendants chose to display on a consumer disclosure. Instead, the question is whether Defendants clearly and accurately disclosed Mr. Dixon's file information in a form he could understand and use to verify and dispute its accuracy.

Defendants' reliance on creditor-facing materiality cases misses this point. Defendants' own motion recognizes that consumer disclosures and consumer reports are entirely different things. *See* ECF Doc. No. 59 at 3 n.2. Defendants cannot preserve that

11

distinction when it helps them, then erase it to narrow Mr. Dixon's statutory disclosure rights.

*Gillespie* explains why that clarity requirement matters. Section 1681g exists so consumers can identify inaccurate information in their files and correct it through the FCRA's dispute process. *Gillespie v. Equifax Info. Servs*., LLC, 484 F.3d 938, 941 (7th Cir. 2007). For that reason, a CRA "must do more than simply make an accurate disclosure of the information in the consumer's credit file"; the disclosure must allow the consumer to compare the disclosed file information against his own records and determine whether the file is accurate. *Id.* An accurate disclosure of unclear information defeats the consumer's ability to review the file. *Id.*

*Selvam* reinforces the same point from the incompleteness side. There, Experian argued that "incompleteness is not the same as inaccuracy," but the Second Circuit rejected that argument because § 1681g requires CRAs to "clearly and accurately disclose . . . [a]ll information," not merely all accurate information. *Selvam v. Experian Info. Sols., Inc*., 651 F. App'x 29, 32-33 (2d Cir. 2016) (summary order). The court explained that § 1681g exists to enable consumers to obtain information needed to dispute potential inaccuracies before the information is sent to third parties. *Id.* at 33.

*Hardin* confirms that this is enough in this District at the pleading stage. In *Hardin*, the Western District of Oklahoma denied Equifax's motion to dismiss a § 1681g(a)(1) claim where the plaintiff alleged that Equifax omitted full account numbers, account information, and payment history, preventing him from understanding, identifying, and verifying accounts in his file. *Hardin v. Equifax Information Services, LLC*, No. CIV-25-

1374-HE, Doc. 15, at 1-3 (W.D. Okla. Jan. 14, 2026). The court rejected Equifax's argument that § 1681g reaches only omitted information bearing on creditworthiness and held that the plaintiff stated a plausible § 1681g(a)(1) claim. *Id.* at 2-3.

Together, these authorities address the precise arguments Defendants raise here. They demonstrate why Defendants cannot satisfy Section 1681g merely by providing a standard document through AnnualCreditReport.com. As *Gillespie*, *Selvam*, and *Hardin* establish, the statutory inquiry does not end simply because a consumer reporting agency transmits a file labeled as a "disclosure." Rather, the issue is whether that disclosure contains the specific information Section 1681g requires, presented in a clear and accurate manner. Because Mr. Dixon alleges that critical data fields and payment histories were missing, the mere transmission of a document through AnnualCreditReport.com does not insulate Defendants from liability.

### B. Mr. Dixon pleads account-specific omissions and unclear disclosures across all three CRAs.

Defendants characterize the Amended Complaint as speculative, but Mr. Dixon does not merely allege that "something" was missing. He identifies the specific consumer reporting agencies, disclosure dates, affected accounts, categories of obscured information, and the continued deficiencies following his written disputes. The specific omissions across each Defendant's disclosures included but were not limited to:

- Experian: For tradelines including Capital One, Citi, Discover, Goldman Sachs, Lowe's, Home Depot, and Westreet, the disclosures omitted substantial blocks of alleged historical payment information from longstanding accounts, left "ND" gaps in payment fields, displayed balance histories reflecting "$0 paid" for months in which payments were allegedly made, and obscured account identifiers in a way that

compounded the difficulty of identifying and verifying the affected accounts. Am. Compl. ¶¶ 25-33.

- Equifax: For tradelines including Home Depot, Barclays, Discover, Citi, Capital One, and Westreet, the disclosures reflected substantial payment-history and account-performance gaps, including 33 out of 45 months on one account marked "ND," incomplete 24-month payment records, and actual-payment amounts masked under the same "ND" designation. The omission or truncation of account identifiers further contributed to the lack of clarity because Mr. Dixon was required to evaluate those incomplete fields across multiple affected tradelines.  Am. Compl. ¶¶ 45-52.

- Trans Union: For tradelines including Barclays, Capital One, Citi, Discover, Home Depot, and Westreet, the disclosures omitted material payment-history and account-performance data. Entire multi-year periods reflected no data for balances, scheduled payments, or amounts paid, while other periods repeated identical scheduled-payment amounts despite fluctuating balances. The truncated identifiers were part of that broader unclear presentation; they are not the sole basis of the claim. Am. Compl. ¶¶ 64-71.

Defendants' contrary argument demands proof of the very information they allegedly failed to disclose. They fault Mr. Dixon for not pleading each historical payment, balance, scheduled-payment amount, or actual-payment amount that should have appeared in the disclosures. However, Rule 8 does not require a consumer to plead a payment-by-payment ledger before discovery into the CRA's own file contents, furnisher data, field mappings, disclosure rules, and rendering logic.

Mr. Dixon pleaded the facts available from the disclosures themselves: longstanding accounts, partial payment histories, large unexplained gaps, adjacent periods where data did appear, "ND" blocks, missing actual-payment fields, balance histories showing "$0 paid" for months on active revolving accounts, and post-dispute disclosures that allegedly continued to show the same defects. Those facts make it plausible that the disclosures were incomplete, inaccurate, or at least unclear. Defendants' contrary theory depends on

14

assuming that every omitted historical period, blank field, "ND" entry, and $0-paid display means no additional file information existed. That is a factual inference in Defendants' favor, not a pleading defect.

Taken together, these allegations provide the "who, what, when, and why" of the disclosure failures. Mr. Dixon pleaded the statutory duty, the disclosure dates, the affected CRAs, the impacted accounts, the disputed fields, the written disputes, and the post-dispute persistence of the same deficiencies. Am. Compl. ¶¶ 19-24, 39-44, 58-63. That is detailed factual pleading, not speculation.

Defendants also fault Mr. Dixon for not attaching the physical disclosures to his complaint, but Rule 8 imposes no exhibit-attachment requirement. Mr. Dixon pleaded the disclosure dates, CRAs, affected tradelines, disputed fields, written disputes, and post-dispute deficiencies. That gives Defendants fair notice. If Defendants believe the disclosures are central and undisputed, they may rely on the ordinary incorporation-by-reference doctrine; their absence as exhibits is not a pleading defect.

### C. *Hardin* is the more analogous pleading-stage authority; *Dotson* involved a materially thinner complaint.

Defendants' reliance on *Dotson* is misplaced. *Dotson* involved a materially thinner pro se complaint that relied on blank fields without pleading facts showing that the omitted information existed, applied to the plaintiff's accounts, or was otherwise recorded and retained by the CRA. *Dotson v. National Consumer Telecommunications and Utility Exchange, Inc.*, No. CIV-25-1171-SLP, 2026 WL 575337 (W.D. Okla. Mar. 2, 2026). Mr. Dixon does not rely on blank template fields alone. He pleads specific CRAs, disclosure

15

dates, accounts, account lifespans, partial payment histories, "ND" blocks, missing actual-payment fields, fractured timelines, $0-paid entries, written disputes, and post-dispute persistence. Those allegations make the claimed omissions plausible in a way *Dotson* did not.

*Hardin* is the more analogous local decision. There, this Court denied dismissal of a § 1681g(a)(1) claim where the plaintiff alleged that Equifax omitted full account numbers, account information, and payment history in a way that prevented him from understanding, identifying, and verifying accounts in his file. *Hardin v. Equifax Information Services, LLC*, No. CIV-25-1374-HE, Doc. 15, at 1-3 (W.D. Okla. Jan. 14, 2026). Mr. Dixon alleges the same kind of consumer-facing disclosure injury, but with additional detail: multiple CRAs, multiple accounts, specific fields, historical-payment gaps, "ND" designations, allegedly inaccurate $0-paid entries, written disputes, and later disclosures showing the same defects. Defendants do not get judgment on the pleadings by treating *Dotson* as the rule while ignoring the more analogous pleading-stage decision in *Hardin*.

The difference is straightforward: *Dotson* rejected speculation from blanks; *Hardin* allowed a § 1681g claim based on omitted account-identifying and payment-history information that impaired the consumer's ability to understand and verify his file. Mr. Dixon's allegations fall on the Hardin side of that line.

## D. Defendants' "No Data," blank-field, historical-payment, and truncation explanations raise factual and system-logic issues.

16

Defendants' remaining § 1681g arguments depend on the same improper inference: that the face of the disclosures conclusively proves the contents of their files. It does not. "ND," "No Data," and blank fields may ultimately mean no information existed. But they may also reflect furnisher coding, field mapping, display rules, template limitations, or suppression/rendering logic. At Rule 12(c), the Court cannot accept Defendants' preferred explanation as true.

The same is true of historical-payment data. Whether a missing month reflects no account activity, no furnished data, retained-but-undisplayed data, or a disclosure-rendering rule is a factual question. Mr. Dixon plausibly alleges the problem through fractured account timelines, large unexplained gaps, adjacent periods where data appears, "ND" blocks, missing actual-payment fields, $0-paid entries, and post-dispute persistence.

Account-number truncation does not defeat the claim either. Mr. Dixon does not need truncation, standing alone, to carry his § 1681g claim. The issue is whether the disclosures, viewed as a whole, clearly and accurately gave him the file information needed to identify, understand, verify, and dispute his accounts. Truncated identifiers matter here because they appeared alongside missing payment histories, "ND" fields, missing actual-payment data, unclear balance histories, and post-dispute persistence. Whether that combined presentation was clear and usable cannot be resolved on the pleadings.

**IV.    Mr. Dixon properly states a § 1681i claim because he disputed both inaccurate and incomplete account information that Defendants failed to reasonably reinvestigate.**

Defendants' § 1681i argument fails because it attacks a caricature of Mr. Dixon's claim. Mr. Dixon does not allege that Defendants had a duty to "delete omissions" in the

abstract. He alleges that he disputed specific account presentations that were incomplete, inaccurate, unclear, and unverifiable, and that Defendants failed to reasonably reinvestigate or modify those account records after receiving notice. That is exactly the kind of dispute § 1681i addresses.

Section 1681i requires a reinvestigation whenever a consumer disputes "the completeness or accuracy of any item of information" in his file and directly notifies the CRA. The statute does not require the consumer to diagnose the CRA's internal system failure, identify the precise database field causing an omission, or prove the dispute before the reinvestigation begins. It requires notice sufficient to identify the disputed item and the general nature of the completeness or accuracy problem. *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242-43 (10th Cir. 2015); *see also Younger v. Experian Info. Sols., Inc.*, 817 F. App'x 862, 868-69 (11th Cir. 2020).

Mr. Dixon met that standard. His disputes identified specific accounts and challenged truncated identifiers, incomplete payment histories, missing actual-payment fields, unexplained "No Data" entries, and confusing balance or payment presentations. There is nothing inconsistent about pleading both § 1681g and § 1681i: § 1681g addresses Defendants' incomplete disclosures, while § 1681i addresses Defendants' failure to reasonably reinvestigate and modify the disputed account information after notice.

**A. Section 1681i expressly covers incomplete and unverifiable information, not just literal falsity.**

Defendants treat § 1681i as though a CRA's reinvestigation duty arises only when a consumer identifies a facially false field. The statute says otherwise. Section

18

1681i(a)(1)(A) applies when the consumer disputes "the completeness or accuracy" of information in his file, and § 1681i(a)(5)(A) requires deletion or modification when disputed information is "inaccurate or incomplete or cannot be verified." 15 U.S.C. § 1681i(a)(1)(A); 15 U.S.C. § 1681i(a)(5)(A).

Defendants' restricted reading also violates the canon against surplusage, by erasing the statutory language Congress chose to include. Courts must give effect to every word Congress used, not interpret a statute in a way that renders statutory terms meaningless. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Completeness and verifiability are therefore part of the statutory design. The statute does not permit a CRA to leave disputed, incomplete, or unverifiable information untouched merely because the consumer described the problem as an omission, missing field, or data gap.

Defendants' narrow "no literal falsity" theory also fails because FCRA inaccuracy is not limited to a facially false field. The Tenth Circuit recognizes that information may be actionable when it is materially misleading in context. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013). Payment history, balance information, scheduled-payment information, and actual-payment data are account-performance information. If those fields are incomplete, internally inconsistent, unclear, or unverifiable, they can plausibly distort the account narrative and prevent the consumer from determining whether the disputed information is accurate and complete.

**B. Defendants' "delete the omissions" argument misstates § 1681i(a)(5), which uses mandatory deletion or modification language.**

19

Defendants characterize this theory as "curious"[1] and "perplexing,"[2] arguing that Mr. Dixon cannot allege both omitted information under § 1681g and failure to delete omitted information under § 1681i. However, section 1681i expressly addresses disputes over "the completeness or accuracy of any item of information" in a consumer's file. 15 U.S.C. § 1681i(a)(1)(A). To resolve those disputes, § 1681i(a)(5)(A) provides that if a challenged item "is found to be inaccurate or incomplete or cannot be verified," the CRA "shall promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate." 15 U.S.C. § 1681i(a)(5)(A).

Defendants' rhetoric completely omits this statutory alternative of modification. That matters because the disputed "item of information" was not a blank space floating in isolation. It was the account information as Defendants presented it: payment histories, balance histories, actual-payment fields, account identifiers, "ND" entries, and related account-performance data. If those account presentations were incomplete, inaccurate, or could not be verified after reinvestigation, § 1681i(a)(5)(A) required Defendants to delete or modify the disputed item as appropriate. Modification is the statutory answer to an incomplete or misleading account presentation.

**C. The post-dispute disclosures plausibly show that Defendants failed to reasonably resolve the disputed payment-history and account-completeness issues.**

There is nothing inconsistent about pleading both § 1681g and § 1681i. Section 1681g governs what Defendants were required to clearly and accurately disclose to Mr.

---

[1] ECF Doc. No. 59 at 2.
[2] ECF Doc. No. 59 at 5.

Dixon. Section 1681i governs what Defendants were required to do after Mr. Dixon disputed the completeness, accuracy, and verifiability of the account information those disclosures revealed. The first violation concerns disclosure; the second concerns the failure to reasonably reinvestigate and correct the disputed account information after notice.

The core of Mr. Dixon's § 1681i theory is straightforward. He disputed account-level payment histories, missing payment fields, unexplained "No Data" entries, and unverifiable account presentations. Defendants allegedly responded without resolving those problems. The Amended Complaint anchors that claim in a clear timeline: Mr. Dixon received his initial disclosures in June 2025, sent written disputes later that month, and then received updated September 2025 disclosures that continued to reflect materially similar deficiencies. Am. Compl. ¶¶ 19-24, 39-44, 58-63.

Defendants may later argue that the disputes were unclear, that they interpreted them reasonably, that they reviewed all relevant information, that furnishers verified the challenged fields, or that the later disclosures were accurate and complete. But those are factual defenses. Reasonableness under § 1681i turns on what the CRA knew, what the consumer disputed, what information the CRA reviewed, what the furnisher provided, and whether the CRA addressed the substance of the dispute. *See Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015). Those questions cannot be answered from the pleadings alone.

Nor could Defendants satisfy § 1681i by mechanically confirming isolated fragments of account information while ignoring the substance of Mr. Dixon's disputes.

21

See Cushman v. Trans Union Corp., 115 F.3d 220, 224-25 (3d Cir. 1997). When a consumer disputes incomplete payment histories, missing actual-payment fields, unexplained "No Data" entries, and unverifiable account presentations, a reasonable reinvestigation must address those challenged completeness and verification issues. Merely confirming that an account exists, or that some account data was furnished, would not resolve whether the account information remained incomplete, misleading, or unverifiable.

## V.    Mr. Dixon plausibly states a § 1681e(b) claim based on report-facing conduct and materially misleading account-performance information.

Defendants' § 1681e(b) argument also fails at the pleadings stage. Section 1681e(b) applies "[w]henever a consumer reporting agency prepares a consumer report" and requires the CRA to follow reasonable procedures to assure maximum possible accuracy. 15 U.S.C. § 1681e(b). Unlike § 1681i, § 1681e(b) is not conditioned on a prior consumer dispute. The relevant question is whether Defendants prepared or furnished consumer reports containing materially inaccurate, incomplete, or misleading information and whether their procedures were reasonable.

Mr. Dixon plausibly alleges report-facing conduct. The Amended Complaint alleges that Defendants are consumer reporting agencies that furnish consumer reports to third parties for compensation. Am. Compl. ¶¶ 10, 12, 14. It further alleges that Defendants failed to follow reasonable procedures in preparing Mr. Dixon's credit reports and credit files they published and maintained. Am. Compl. ¶ 93. Further, the disclosures identify third-party access associated with Lowe's/SYNCB and Westreet Federal Credit Union. At Rule 12(c), those allegations plausibly support the inference that Defendants prepared or

22

furnished consumer reports. The exact contents of those reports are a discovery issue, not a basis for judgment on the pleadings.

Moreover, Mr. Dixon's § 1681e(b) claim is not defeated by Defendants' assertion that he alleges no actionable inaccuracy. FCRA inaccuracy is not limited to a field that is facially false. As previously discussed, the Tenth Circuit recognizes that information may be actionable when it is materially misleading in context. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013). Mr. Dixon alleges materially incomplete and misleading account-performance information, including incomplete payment histories, missing payment fields, "No Data" entries, balance/payment inconsistencies, and omitted favorable payment information. Am. Compl. ¶¶ 25-33, 45-52, 64-71. Payment history, balance information, scheduled-payment information, and actual-payment data are not decorative. They are account-performance information that plausibly can affect how a consumer's credit standing is evaluated.

At this stage, Mr. Dixon does not have to prove the precise contents of each third-party report or identify the exact procedure that caused the challenged account presentations. Those facts are in Defendants' possession. It is enough that he plausibly alleges report-facing conduct, materially misleading account-performance information, and unreasonable procedures. Defendants may contest those allegations after discovery, but they are not entitled to judgment on the pleadings.

VI.     **Defendants' willfulness and damages arguments do not justify judgment on the pleadings or dismissal with prejudice.**

23

Defendants' willfulness argument does not defeat the underlying FCRA claims. Willfulness is not an independent cause of action; it is the culpability standard that determines whether remedies are available under § 1681n.

Willfulness under the FCRA includes reckless disregard, not only intentional misconduct. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-58 (2007); *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011). Defendants treat Safeco as a pleading-stage safe harbor. It is not. Safeco asks whether the defendant's conduct created a risk of violating the FCRA substantially greater than mere carelessness. That inquiry cannot be resolved here because Mr. Dixon's willfulness theory depends on facts about Defendants' disclosure systems, payment-history procedures, dispute handling, and post-dispute persistence.

Defendants' counsel-focused "copycat" argument proves too much. Defendants open their Motion by emphasizing the number of similar § 1681g cases filed against nationwide CRAs, then ask the Court to treat that recurrence as a reason for suspicion. However, a statutory claim does not become less plausible because multiple consumers allege that the same nationwide CRAs are using standardized disclosure systems to produce similar omissions, unclear fields, and incomplete file disclosures. Repeated consumer enforcement does not make a statutory right less real.

Nor can Defendants use recurrence as both a sword and a shield. Defendants wield the nationwide frequency of similar lawsuits as an offensive sword to disparage Mr. Dixon's claims as an unoriginal litigation trend. Yet they simultaneously ask the Court to dismiss before discovery into how those automated systems and uniform templates actually

24

operate. Defendants cannot use the alleged recurrence of similar claims to disparage Mr. Dixon's pleading while also seeking dismissal before discovery into the standardized systems, templates, and display rules allegedly producing those recurring defects.

If similar omissions and errors are appearing across cases nationwide, that pattern points toward standardized disclosure templates, display rules, suppression logic, field mapping, and uniform system design, not dismissal before discovery. The scale of the alleged recurrence is not a reason to close the courthouse door; it is a reason to test whether standardized CRA systems are producing standardized disclosure defects.

Defendants' damages argument also fails. Actual damages are not required to recover statutory damages for willful noncompliance under § 1681n. In any event, Mr. Dixon plausibly alleges actual harm, including impaired ability to identify and correct errors, obstruction of dispute rights, deprivation of favorable credit information, confusion, delay, emotional distress, wasted time and resources, reputational and financial harm, increased risk of unfavorable credit consequences, and prolonged publication of false or incomplete information. Defendants may dispute causation and proof later; they cannot defeat damages at the pleadings stage. At minimum, if the Court concludes additional factual detail is required, dismissal should be without prejudice and with leave to amend because the additional details Defendants demand concern internal file contents, disclosure logic, reinvestigation steps, and system procedures uniquely within Defendants' possession.

Respectfully submitted:

**Law By JW, LLC**
1590 Jonesboro Rd. SE #6839
Atlanta, GA 30315
Phone: (832) 422-6362
jeff@lawbyjw.com


By: _____
JEFFREY A. WILSON


## CERTIFICATE OF SERVICE

I hereby certify that on Monday, June 22, 2026, a true and correct copy of the foregoing pleading was duly furnished to all counsel of record using the ECF system for filing.

/s/ Jeffrey A. Wilson
Jeffrey A. Wilson

26